UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                          :

UNITED STATES OF AMERICA,            :
                                          :

            – v –                :   Case No. 14 Cr. 810 (CM)
                                          :

MOSHE MIRILISHVILI, *et al.*,          :
                                          :

               Defendants.       :
                                          :
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO
GOVERNMENT'S OFFER OF "OTHER ACT" EVIDENCE
RELATED TO THE DEFENDANT'S MEDICAL LICENSING
PROCEEDINGS FROM 1993 AND 1996 and
<u>ANY EVIDENCE OF TAX FRAUD</u>**

Henry E. Mazurek
Wayne E. Gosnell, Jr.
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 305
New York, New York 10165
*Attorneys for Defendant Mirilashvili*

**Table of Contents**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ......................................................................................................................3

I.  DR. MIRILASHVILI'S CONDUCT WITH PATIENTS HE SAW IN 1990
TO 1992 AND THE NEW YORK STATE BOARD'S FINDINGS BASED
ON EXPERT REVIEWS OF THAT TREATMENT SHOULD BE
PRECLUDED AS (1) REMOTE, (2) UNDULY PREJUDICIAL, (3)
CONFUSING TO THE JURY BECAUSE OF DIFFERENT NEGLIGENCE
STANDARD OF REVIEW, (4) CREATING A DISTRACTING TRIAL-
WITHIN-A-TRIAL ON MORE THAN 20-YEAR OLD CONDUCT, AND
(5) IRRELEVANT TO THE ONLY DISPUTED ISSUE AT TRIAL OF
WHETHER DR. MIRILASHVILI ACTED AS A DRUG DEALER IN 2012
TO 2014 ...................................................................................................................3

A.  The Doctor's Injection Treatment of Patients in the 1990s Does Not
Provide Any Background to the Charged Conspiracy………………..….5

B.  The Government's Proffered State Board Action and Underlying Conduct
Should Be Precluded Under Rules 4049(b) and 403……………………..6

1.  The Legal Standard Under Rule 404(b)………………………………8

2.  The State Board Actions and Underlying Conduct Are Not Being
Offered for a Proper Purpose and Are Not Relevant………………....9

3.  The Probative Value of the State Board Evidence is Substantially
Outweighed By Its Prejudicial Effect……………………………..13

II.  THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING DR.
MIRILASHVILI'S TAX RETURNS AS EVIDENCE OF UNDER-REPORTING
INCOME FROM THE MEDICAL PRACTICE…………………………………14

CONCLUSION .......................................................................................................................1

i

## TABLE OF AUTHORITIES

### Cases

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ..............................................................................3

*Holland v. United States,* 348 U.S. 121 (1954)………………………………………17

*Huddleston v. United States*, 485 U.S. 681 (1988)...............................................................5

*King v. Ahrens*, 16 F.3d 265 (8th Cir. 1994)........................................................................2

*Ricketts v. City of Hartford*, 74 F.3d 1397 (2d Cir. 1996).....................................................4

*United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir. 1984)..........................................1

*United States v. Bartee*, 479 F.2d 484 (10th Cir. 1973)......................................................11

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992)...................................................5

*United States v. Dennis*, 183 F.2d 201 (2d Cir. 1950)...........................................................9

*United States v. Elder*, 682 F.3d 1065 (8th Cir. 2012).......................................................11

*United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006) ..................................................1

*United States v. Gilan*, 967 F.2d 776 (2d Cir. 1992).............................................................8

*United States v. Hooker,* 541 F.2d 300 (1st Cir. 1976) .....................................................10

*United States v. Kallin,* 50 F.3d 689 (9th Cir. 1995)………………………………….17

*United States v. Kaplan*, 895 F.2d 618 (9th Cir. 1990).....................................................11

*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983)..........................................................10

*United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978)……………………………...16-17

*United States v. Ringwalt*, 213 F.Supp.2d 499 (E.D. Pa. 2002)………………………...17

*United States v. Rosen*, 582 F.2d 1032 (5th Cir. 1978) ...................................................12

*United States v. Ruffin*, 575 F.2d 346 (2d Cir. 1978)………………………………….17

*United States v. Scott*, 667 F.3d 72 (2d Cir. 2012)...............................................................5

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007)………………………………….17

*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004)...........................................................11

*United States v. Tran Trong Cuong*, 18 F.3d 1132 (4th Cir. 1994)....................................2

*United States v. Young,* 745 F.2d 733 (2d Cir. 1984)……………………………………15

**Introduction**

By motion dated January 25, 2016, the government seeks a pretrial ruling from this Court to admit "other act" evidence at trial against Dr. Mirilashvili relating to his treatment of patients in 1990 – more than a generation ago. (*See* Gov. Motion *In Limine*, 1/25/16, at Exs. B and C:  Letters of Drs. Carter and Gidumal regarding reviews of patient files from 1990) (hereinafter "Gov. 404(b) Mem.")  This motion can be dealt with in short order.  The Court should preclude this evidence on several grounds:  (1) it is too remote in time from the conduct alleged in the Indictment; (2) the medical licensing proceedings the government seeks to introduce are based on a different level of standard of care than that at issue in this criminal case under the Controlled Substances Act ("CSA"), and are therefore not relevant to the intent findings that the jury must make; (3) even if the Court were to find some slight relevance to this evidence, its limited probative value is substantially outweighed by the danger of unfair prejudice and confusion that the jury could convict Dr. Mirilashvili for being a "bad doctor" as opposed to the CSA standard, which requires proof beyond a reasonable doubt that the doctor acted in a way where "he cease[d] to be a physician at all." *United States v. Wexler,* 522 F.3d 194, 204 (2d Cir. 2008) (quoting *United States v. Feingold*, 454 F.3d 1001, 1011 (9th Cir. 2006); (4) the government's proffer would create a burdensome and time-consuming trial-within-a-trial about events occurring 25 years ago (*see United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984); and (5) it is unclear that the government has competent, admissible non-hearsay evidence that it could present to prove the conduct alleged in Drs. Carter and Gidumal's expert reviews that were conducted in 1993 and 1995.

Finally, the fact that Dr. Mirilashvili's license was revoked in 1996, by a preponderance of evidence, for negligent and gross negligent conduct as a doctor is, by itself, not relevant to any issue before the jury at this trial, *i.e.,* whether the doctor intended to act as a drug dealer rather than a medical doctor.  In effect, the government seeks to present inadmissible reputation-type evidence that Dr. Mirilashvili was a "conspicuously bad" doctor in the 1990s. (Gov. 404(b) Mem. at Ex. D (8/31/95 Report), p. 13.)  *See e.g., United States v. Tran Trong Cuong*, 18 F.3d 1132, 1135-36 (4th Cir. 1994) (reversing doctor-defendant's conviction under the CSA for, *inter alia*, trial court's abuse of discretion in admitting evidence of doctor's bad reputation); *see also King v. Ahrens*, 16 F.3d 265, 268-70 (8th Cir. 1994) (in civil malpractice case, *with lesser negligence standard of care than this criminal case*, affirming trial court's ruling to preclude evidence of doctor-defendant's prior medical license suspension under Rule 404(b) as prejudicial because "there was great danger that the jury might improperly infer from the fact of a distant and unrelated past license suspension that Dr. Ahrens' professional judgment and conduct in the instant case must have been substandard because his license had been suspended on a prior occasion").

The government would be injecting reversible error into this trial by seeking to tag Dr. Mirilashvili as a "bad doctor" in a criminal CSA case, which requires findings that he was acting *not as a doctor at all*, but as a drug dealer, *i.e.,* where malpractice and negligent conduct as a doctor is irrelevant and prejudicially confusing.  *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006) (explaining that to be convicted under CSA, a physician must have acted as a "drug dealer as conventionally understood").

After filing its initial motion, the government also served notice on defendant that it intends to offer evidence of alleged tax fraud by Dr. Mirilashvili for under-reporting income. For reasons explained below, this evidence amounts to mere inadmissible propensity evidence and should also be precluded at this narcotics trial.

<u>ARGUMENT</u>

**I.**

**DR. MIRILASHVILI'S CONDUCT WITH PATIENTS HE SAW IN 1990 TO 1992 AND THE NEW YORK STATE BOARD'S FINDINGS BASED ON EXPERT REVIEWS OF THAT TREATMENT SHOULD BE PRECLUDED AS (1) REMOTE, (2) UNDULY PREJUDICIAL, (3) CONFUSING TO THE JURY BECAUSE OF DIFFERENT NEGLIGENCE STANDARD OF REVIEW, (4) CREATING A DISTRACTING TRIAL-WITHIN-A-TRIAL ON MORE THAN 20-YEAR-OLD CONDUCT, AND (5) IRRELEVANT TO THE ONLY DISPUTED ISSUE AT TRIAL OF WHETHER DR. MIRILASHVILI ACTED AS A DRUG DEALER IN 2012 TO 2014**

The government offers inadmissible "other act" evidence related to "evidence of [Dr. Mirilashvili's] State Actions [before the New York State Board for Professional Conduct], as well as the conduct underlying those Actions," both as "direct evidence and necessary background of the charged conspiracy" and "pursuant to Rule 404(b) as relevant and important evidence of the defendant's knowledge and intent" with respect to his pain management treatment of patients more than two decades later in 2012-2014. (Gov. 404(b) Mem. at 3.)

In its motion, the government does not explain who its witnesses or other form of evidence would be in introducing the so-called "State Action" and "conduct underlying

3

those Actions." This is the government's first problem. If it intends to introduce the expert opinions of Drs. Carter and Gidumal, whose letter reports are attached at Exhibits B and C of the motion, the defense necessarily requests the underlying patient records relied upon by those doctors in reaching their opinions for our own expert review. Also, because the standards of pain management care in 1990 to 1992 were very different than those existing today[1], the historical standards evaluated by Drs. Carter and Gidumal should also be made available. These issues highlight the unwanted specter of risking jury confusion and unnecessary delay in litigating the merits of remote medical treatment different from those at issue in this case. *Ricketts v. City of Hartford*, 74 F.3d 1397, 1414 (2d Cir. 1996) (excluding prior act evidence due to the considerable risk of an unnecessary trial-within-a-trial).

According to the proffered medical reports in the government's exhibits, the treatment reviewed by Drs. Carter and Gidumal in the 1990s for six different patients of Dr. Mirilashvili all involved "nerve block" steroid injections to mitigate pain (which were a lot more popular in the medical field at that time before research showed their limited effect and the trend moved back toward non-invasive medication). (*See* Gov. 404(b) Mem., at Exs. B, C and State Board Report at D.) The case at trial does not involve any injection treatment at all.

---

[1]     These different medical standards will create another area of potential confusion to the jury in an already complicated context of differentiating medical "standards of care" from criminal intent to act outside of a "legitimate medical purpose in the usual course of professional practice." *Wexler*, 522 F.3d at 204 (quoting *United States v. Moore*, 423 U.S. 122, 124 (1975)).

**A.     The Doctor's Injection Treatment of Patients in the 1990s Does Not Provide Any Background to the Charged Conspiracy**

The government presents the hard to follow argument that this remote conduct is necessary "background" information to "provide the jury with the complete story of the crimes charged" of prescribing oxycodone-related treatment to fake patients in 2012-2014. (Gov. 404(b) Mem. at 11.)  We do not need to linger much on this point.  The doctor's conduct at issue in this case is completely unrelated to his ancient practice of steroid injections in the 1990s.  To the extent that the government seeks to show that the doctor was punished for poor record-keeping, providing treatment that did not fit the patients' conditions at that time, or over-injecting patients, this information is not "part of the very act charged here" or necessary to tell the jury about the conduct charged more than 20 years later. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

This evidence really falls squarely within Rule 404(b), which prohibits the introduction of extrinsic acts that might adversely reflect on the actor's character. *See United States v. Scott*, 667 F.3d 72, 79 (2d Cir. 2012) (citing *Huddleston v. United States*, 485 U.S. 681, 685 (1988) (rejecting government's argument that defendant's prior contacts with police were necessary "background" to police officer's later recognition of defendant at time of crime).  The fact that the doctor's peers in the 1990s believed he acted below the negligence or gross negligence standards of medical care then, invites speculation that he has the propensity to give bad medical advice and treatment.  Because this testimony adversely reflects on Dr. Mirilashvili's character, the evidence must be evaluated under Rule 404(b).

B.    **The Government's Proffered State Board Actions and Underlying Conduct Should Be Precluded under Rules 404(b) and 403.**

The government is no more persuasive in arguing that the remote conduct and Board disciplinary actions should be admitted at trial to prove Dr. Mirilashvili's "knowledge" and "intent" to falsify patient files and prescribe oxycodone for purposes of unlawful diversion in 2012-2014.

At the outset, it should be mentioned that the government's case here is really not about medicine at all.  Simply put, the government claims that the doctor intentionally ran a "pill mill," *i.e.,* everything he did was intended to get the most prescriptions of oxycodone on the street as possible in exchange for $200 per prescription.  (*See* Gov. 404(b) Mem. at 4:  "As detailed in the Indictment, substantially all of the 'patients' who obtained oxycodone prescriptions from the defendant were not legitimate patients at all but worked instead as part of 'crews' run by Crew Chiefs who paid people to pose as 'patients' and collect oxycodone prescriptions so that the prescriptions could be filled and the pills resold.").  Thus, this theory does not implicate Dr. Mirilashvili's "knowledge" or "intent" to practice medicine properly, but rather only making it look like he was practicing medicine.  This is very different from a scenario where the governments claims a doctor was practicing medicine but his conduct fell outside of what an objective physician would do in similar circumstances.

As quoted above, the government intends to show at trial that there were basically no real patients – thus, the repeated use of quotation marks around the term patient throughout its submission.  The government's theory is that everything was faked in this office – the patients, the medical records, the lab reports, everything.  Thus, the government's own theory demonstrates the lack of relevance of the State Board Actions

and their effect on the doctor's "knowledge" of how to perform a patient examination, or to record medical notes, or order diagnostic tests. Based on what the government charged in the Indictment, it will seek to show that none of those things mattered. The theory of this Indictment is that the doctor **_knew_** that all of the documents, tests, and notes were not real. There is no need to appraise a diamond before you sell it if you know it is fake. Here, the government's claim is that Dr. Mirilashvili provided **_no_** medical care – indeed, it claims the "patients" were not patients at all, but were only people paid to collect prescriptions so that the pills could then be resold on the street.

This is not a case where the government alleges, for example, that the doctor-defendant saw real patients and that he was prescribing oxycodone based on unrelated symptoms. In that context, it would be more relevant to show the doctor's intent to give the wrong treatment to patients by presenting evidence of the "usual course of professional conduct" of first reviewing the patients' medical histories and prior treatment. But this is not the government's case here. The government is simply saying Dr. Mirilashvili agreed to have "drug crews" run its narco-trafficking out of his office. Thus, the relevance of the defendant's "knowledge" of the level of required medical care becomes much less probative at the very outset of our Rule 404(b) review.

Similarly, based on the Indictment's theory, the results of the State Board Actions are not relevant to rebut the defendant's claim that he did not know that a "drug crew" infiltrated his office staff and patients, and that they were running an illegal drug operation from it. The good faith defense in this instance is that Dr. Mirilashvili did not intend to join a drug crew and did not know that the "crew" faked documents and lied to him. In this scenario, the level of medical care is irrelevant; indeed, the Indictment

charges and the government repeatedly has claimed that the doctor knew that the "patients" were faked to create a medical "sham." (Gov. 404(b) Mem., at 4.)  Thus, the only relevant facts here are those that tend to show or dispel the allegation that the doctor acted together with his office manager and other "crew members," or was being deceived by them.

The real reason the government seeks to introduce the fact that Dr. Mirilashvili had his license revoked in 1996 is to malign his character to show that he was a bad doctor who only could earn money by joining a narcotics conspiracy.  This is not a proper purpose for "other act" evidence under Rule 404(b).

1.   The Legal Standard Under Rule 404(b)

While the Second Circuit has adopted an "inclusionary" approach to "other act" evidence under Rule 404(b), it has emphasized that this rule is "not a carte blanche to admit prejudicial extrinsic evidence when . . . it is offered to prove propensity." *Scott*, 667 F.3d at79 (citing *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009)).

The proper Rule 404(b) inquiry was provided by the Supreme Court in *Huddleston*, 485 U.S. at 691-92. *See also United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (discussing adoption of *Huddleston* test).  Under *Huddleston,* the court must consider whether "other act" evidence:  (1) is being admitted for a proper purpose under the rule; (2) relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) if a limiting instruction can remove any risk of undue prejudice. *Id.*

2.  The State Board Actions and Underlying Conduct are Not Being Offered for a
Proper Purpose and Are Not Relevant

The government proffers that this remote State Board evidence is relevant to show

the defendant was "on notice" that the conduct alleged here was not part of legitimate

medical conduct or within the usual course of professional practice and thus he was not

acting in good faith when he issued prescriptions for oxycodone. (Gov. 404(b) Mem. at

13.)  As stated in the section above, this proffer does not match the government's theory

of the case, *i.e.,* the practice was a complete sham and no medicine was being practiced at

all – everything done in the practice was faked.  Moreover, the introduction of historical

findings of "negligence" or even "gross negligence" by the doctor in his treatment of

patients with steroid injections in the 1990s (Ex. D. to Gov. 404(b) Mem.) is not

probative of "knowledge" or "intent" to divert oxycodone to street sales two decades

later.

First, this Court can preclude the evidence of the 1990s treatment for the simple

reason it is too remote, giving it little to no relevance to the much later charged conduct.

*See United States v. Dennis*, 183 F.2d 201, 231 (2d Cir. 1950) (finding other act evidence

too remote to be relevant).[2]

---

[2]    The government makes the curious argument that the "other act" evidence is not
remote because the effects of that conduct extended all the way to 2010 – just shortly
before the charged conduct in this case – and thus, the memory of the conduct should
have been fresh in the doctor's mind. (Gov. 404(b) Mem. at 2, 171-18.)  This argument
shows the irrelevance of the underlying "other acts" to this case.  The government is
actually only seeking their introduction to show the doctor's bad reputation.  The fact of
whether Dr. Mirilashvili "remembered" his prior license revocation at the time of the
charged conduct is not probative of whether he acted with intent to divert oxycodone in
this case.  The only relevant knowledge or intent here is whether the doctor
"remembered" how to act as a doctor at all, and the defense is not presenting a theory that
the doctor suffered from such amnesia.

Second, the Court can preclude this evidence based on the lack of similarity between the doctor's conduct in 1990-1992 and that at issue in this case.  In the six patient cases evaluated by the State Board in 1996, Dr. Mirilashvili provided steroid injections for temporary pain relief. (Gov. 404(b) Mem. at Ex. D.)  The level of care required before a doctor can advise a patient to undergo painful invasive procedures is higher than that required before prescribing non-invasive medication.  In addition, the former case does not at all imply intent to violate the criminal law, as does the distribution of narcotics outside of the exercise of medical judgment.  In the disciplinary proceedings, the State Board only found a sub-standard level of medical care relating to actual medical treatment, albeit treatment that should have been recommended only after a more thorough medical examination and history had been conducted.  In this Indictment, the doctor is charged with knowingly and willingly breaking the criminal law by distributing narcotics for non-medical reasons.  These two fact patterns present little in common and provide a sufficient reason alone to preclude this "other act" evidence. *See United States v. Moon*, 718 F.2d 1210, 1232 (2d Cir. 1983) (precluding "other act" evidence for lack of similarity in conduct).

Third, in CSA cases, the "knowledge" of whether a doctor is acting with a legitimate medical purpose and in the usual course of professional practice is evaluated by *objective* markers of physician conduct.  *See, e.g., United States v. Hooker,* 541 F.2d 300, 305 (1st Cir. 1976) (upholding conviction of physician-defendant without reference to anything having to do with any standard of care, but instead because the physician-defendant knew that the controlled substances he prescribed were not going to be used for therapeutic purposes and did not even try to discern what medical problems a patient

10

might have).  The government cannot bootstrap its *objective* showing of what is the usual practice of doctors with evidence of Dr. Mirilashvili's own past incidents of negligent or gross negligent conduct.  The government will have an opportunity to present its view of what "objectively" was the usual practice of pain management by physicians *during the relevant time period charged in the indictment* through its noticed expert witness, Dr. Gharibo.[3]

In short, offering Dr. Mirilashvili's prior disciplinary proceedings as evidence of his past negligence does not make it more or less probative that he acted within the usual course of conduct and exercised reasonable medical judgment twenty-plus years later. Nor does this evidence present what was *objectively* within the usual course of a physician's conduct at the time of the CSA charges in the Indictment. *See e.g., United States v. Singh*, 390 F.3d 168 (2d Cir. 2004) (defendant-physician convicted where he developed scheme for nurses to see patients without the doctor, and defendant-physician signed prescriptions without even knowing identity of patients); *United States v. Elder*, 682 F.3d 1065, 1072 (8th Cir. 2012) (upholding conviction of physician-defendant where he did not maintain *any* patient files and *rarely* saw patients himself, yet prescribed medication to 544 patients in a five-month period); *United States v. Kaplan*, 895 F.2d 618, 620-21 (9th Cir. 1990) (failure of defendant-doctor to *ever* conduct physical exam or to take medical histories was sufficient evidence to convict defendant-doctor under

---

[3]     As stated before, the standards of care for pain management have substantially evolved over the last two decades. *See* Comprehensive Treatment of Chronic Pain by Medical, Interventional and Integrative Approaches, The American Academy of Pain Medicine: Feb. 11, 2013, at p. 1005.  Thus, what was "usual" in 1990 or 1992 – the time period of the "other act" evidence – was not the same as the time period in this Indictment, 2012-2014.  This fact adds to the risk of undue jury confusion and waste of time.

CSA); *United States v. Bartee*, 479 F.2d 484, 485-87 (10th Cir. 1973) (finding there was sufficient evidence to support conviction under CSA where defendant-doctor told patient to go to "different drugstores each time [the patient filled a prescription]," because of pressure from law enforcement, used same terms for controlled substances as drug crews, and *never* performed a physical examination); *United States v. Rosen*, 582 F.2d 1032, 1036 (5th Cir. 1978) (setting out list of factors for determining validity of conviction under CSA, including that a physician warned patients to fill prescriptions at different drug stores and referred to pain medication under code name).

The issue of whether Dr. Mirilashvili acted in this case with intent to conform to the "usual course of professional conduct" and within "reasonable medical judgment" cannot be found, and is not properly inferred, based on past negligent conduct.  This is not a medical malpractice case or a disciplinary proceeding.

This is a criminal case that can result in conviction only upon proof beyond a reasonable doubt based on a "the higher showing that the practitioner intentionally has distributed controlled substances for no legitimate medical purpose and outside the usual course of professional practice." *Feingold*, 454 F.3d at 1010.  The only relevant medical standard in this criminal case is what the "usual course of professional conduct" and "medical purpose" was for pain management at the time that Dr. Mirilashvili treated patients in 2012-2014.

Dr. Mirilashvili's past indiscretions are completely irrelevant to this review, and actually are unduly confusing because the past conduct was judged on a lesser standard of negligence.

Thus, the government has not shown a proper and relevant purpose to admit the 1996 Board Actions under Rule 404(b).

   3.   The Probative Value of the State Board Evidence is Substantially Outweighed
        By Its Prejudicial Effect

The standards of care at issue in the proposed State Board Actions are not the same as those at issue in this criminal case.  In the 1996 State Board findings (Gov. 404(b) Mem., Ex. D), the Board evaluated Dr.  Mirilashvili's conduct as to six patients who were treated with steroid injections under a "negligence" or "gross negligence" standard. (*Id.*)  These standards were defined in the Board's report, as follows:

> Negligence is the failure to exercise the care that would be
> exercised by a reasonably prudent licensee under the
> circumstances.
>
> Gross negligence is the failure to exercise the care that
> would be exercised by a reasonably prudent physician
> under the circumstances, and which failure is manifested by
> conduct that is egregious or conspicuously bad.

*Id.*, Ex. D, at p. 13.

These standards of care are different from the one that the jury will be instructed to apply in this case. *See Moore*, 423 U.S. at 143 (holding that to find a physician guilty under the CSA, proof must be such that "[i]n practical effect, he acted as a large-scale 'pusher' not as a physician").  In adopting the Ninth Circuit's holding in *Feingold*, the Second Circuit set the standard of proof in doctor-defendant CSA cases, as requiring evidence that the physician-defendant acted without "a legitimate medical purpose" and beyond "the usual course of professional practice." *Wexler*, 522 F.3d at 204.  Thus, while a standard of care is *relevant* in evaluating a doctor's conduct, it must rise to a level well beyond negligence or even gross negligence.  As the Drug Enforcement Administration

13

has stated:  "[T]he types of cases in which physicians have been found to have dispensed controlled substances improperly under Federal law generally involved facts where the physician's conduct is not merely of questionable legality, but instead is a glaring example of illegal activity."  *See* 71 F.R. 52716, 52717 (Sept. 6, 2006).

Thus, the government's offer to introduce the New York State Board's findings of prior bad conduct under a negligence or gross negligence standard will act only to add to jury confusion and lead to the unacceptable risk that the jury could convict Dr. Mirilashvili in this criminal case for conduct below what a "reasonably prudent doctor" would have done if confronted with the facts presented here.  Of course, some "reasonably prudent doctors" would never even prescribe narcotics at all for fear of facing scrutiny by law enforcement.  This clearly is not the standard to be employed here.  Mixing these standards in a criminal case risks a conviction based on proof less than the criminal law requires.

The minimal relevance, remoteness in time, and dissimilarity of treatment involved in the State Board evidence all lead to the unmistakable conclusion that the risk of unfair prejudice substantially outweighs its probative value.

## II.

### THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING DOCTOR MIRILASHVILI'S TAX RETURNS AS EVIDENCE OF UNDER-REPORTING INCOME FROM THE MEDICAL PRACTICE

After filing its *in limine* motion, the government served notice on the defendant that it will also seek to introduce evidence related to an alleged under-reporting of federal taxes by Dr. Mirilashvili during the years of his medical practice, presumably from 2012

to 2014.  In those years, Dr. Mirilashvili reported receipt of business revenue in the amounts of $250,000, $563,112, and $565,000.  The government now claims that this was an intentional under-reporting of income during those years.

The Court should preclude this evidence as improper under Federal Rules of Evidence 404(b) and 403.  The government again seeks to smear the character of Dr. Mirilashvili and show criminal propensity.  As stated above, these are improper purposes under Rule 404(b).

In his *in limine* motions dated January 25, 2016, Dr. Mirilashvili originally moved to preclude the government from offering evidence of his income from the pain management practice as evidence of unlawful drug dealing.  *See* Def. Mem. Law in Support of *In Limine* Motions, 1/25/16, at 39.  Receiving large sums of cash in a medical practice in exchange for services is not a crime.  How much income a doctor earns has no bearing on whether he is unlawfully distributing narcotics.  No court has found otherwise.

Importantly, this is not a case where there is any dispute about the source of the doctor's income.  He received his income in exchange for treating patients.  What *is* in dispute is whether he believed he was exercising medical judgment in treating the patients or simply selling prescriptions.  The total sum of income the doctor received does not make one more probable than the other.  Indeed, many doctors make more money practicing medicine than they would dealing drugs on the street.

The circumstances under which courts have permitted evidence of income and/or financial status, such as when a defendant has substantial assets or spends extravagantly without having a known source of income, are not present here.  *See, e.g., United States v. Young*, 745 F.2d 733, 763 (2d Cir. 1984) (permitting evidence of unexplained wealth

coupled with the failure to file tax returns as relevant to the inference that the income was ill-gotten).

Now the government is seeking to double down on its prejudicial argument. Not only does it seek to introduce the fact that Dr. Mirilashvili made a lot of money in his pain practice, but also that he cheated the government by underpaying taxes. This is doubly irrelevant and dangerously prejudicial.

The government here is ***not*** saying the doctor failed to file taxes as evidence of unexplained wealth. It is claiming that he paid fewer taxes than he should have by under-reporting income. This is a complex claim that will require evidence of arcane tax accounting, and cash flow and financial recordkeeping analyses that simply are not a part of this case.

As repeatedly stated above, the Indictment charges that Dr. Mirilashvili joined a "drug crew" and ran a sham medical office that intended to sell prescriptions rather than practice medicine. The fact of whether he reported all of his income, or only some substantial portion of it, is not a fact that makes it more probable or not that he joined this "drug crew." If Dr. Mirilashvili reported no income, very little income, or failed to file tax returns entirely, this might have some relevance to show he did not want to reveal the source of his wealth. However, reporting several hundreds of thousands of dollars of revenue per year from his medical practice is not probative of someone who is seeking to hide the source of ill-gotten gains.

If the government intends to show some form of tax fraud committed by Dr. Mirilashvili based on alleged omitted income or false expenses or some combination of both, this has little probative value and appears to be offered for the improper purpose of

showing criminal propensity.  *See United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir. 1978) ("The Government . . . must do more than disclaim an intention of proving that the defendant is a bad man.").  Indeed, a survey of federal case law shows that evidence of under-reporting taxes in a case not involving allegations of unexplained income has only been admitted to show willfulness in tax evasion cases. *See, e.g. United States v. Ruffin*, 575 F.2d 346, 359 (2d Cir. 1978) ("evidence of significant under-reporting of income" tended to establish willfulness); *United States v. Kallin*, 50 F.3d 689 (9th Cir. 1995) (under-reporting evidence permissible in attempted tax evasion case); *United States v. Ringwalt*, 213 F. Supp. 2d 499, 505 (E.D. Pa. 2002)  ("evidence of . . . under-reporting" supports an inference of willfulness); *see also Holland v. United States*, 348 U.S. 121, 139 (1954).

Because this newest allegation has little probative value, appears to be offered for inadmissible propensity reasons, has an oversized prejudicial effect, and would create jury confusion and require a mini-tax fraud trial within this narcotics case, the Court should preclude admission of any allegation of tax fraud based on under-reported income (the source of which is not in dispute or hidden). *See e.g., United States v. Shellef*, 507 F.3d 82, 99-102 (2d Cir. 2007) (reversing multiple felony convictions on grounds that tax charges were impermissibly joined in the same indictment with wire fraud counts because the tax crimes were factually unrelated to fraud scheme).

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Moshe Mirilashvili respectfully urges the

Court to preclude the government from introducing the proffered "other act" evidence,

including (1) the State Board Actions and underlying conduct, and (2) any allegations of

tax fraud.

Dated: February 5, 2016
      New York, New York

                                    Respectfully submitted,


                                          /S/HEM
                        _____
                By:   Henry E. Mazurek
                      Wayne E. Gosnell, Jr.
                      Clayman & Rosenberg LLP
                      305 Madison Avenue, Suite 305
                      New York, New York 10165
                      *Attorneys for Defendant Mirilashvili*