```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 3  UNITED STATES OF AMERICA,
 4           v.                              S2 14 Cr. 810 (CM)
 5  MOSHE MIRILISHVILI,
 6                Defendant.                 Trial
 7  ------------------------------x
 8                                           New York, N.Y.
                                             March 17, 2016
 9                                           9:45 a.m.
10
    Before:
11
                    HON. COLLEEN McMAHON,
12
                                        District Judge
13
14                       APPEARANCES
15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    EDWARD DISKANT
17  BROOKE CUCINELLA
         Assistant United States Attorneys
18
    HENRY MAZUREK
19  WAYNE GOSNELL
         Attorneys for Defendant
20
21
    ALSO PRESENT:  MICHAEL MULLER, DEA
22                 ELIZABETH JOYNES, Paralegal
                   MICHAEL DOMANICO, Paralegal
23
24
25
```

1            (Trial resumed; jury not present)

2            THE COURT:  I am going to bring the jurors out.  I am going to say the following to the jurors:  Ladies and gentlemen, we are working on your note.  There is a problem with your note that we are having because of your use of the verb work.  If by the word work you mean employed, there is no testimony that's responsive to your note.  If on the other hand you are using the word differently, the parties are afraid that by sending back testimony it may indicate that I, the judge, have a particular view of the evidence, and I am going to ask you to recraft that note.  If you want to know about the dealings between Raymond Williams and Mr. Correa and the doctor when he was in the Bronx, please say that.  If you want to know about something else, please say that.  And then I will understand your note.

16           (Jury present)

17           THE COURT:  Good morning to you.  Top of the morning to you.

             I have your note and I'm having a problem with the note.  The note, which is Court Exhibit 1, says:  We need the copy of the transcript by Abraham Correa referring to Correa and Ray Williams having worked with Dr. Mirilishvili in the Bronx before moving to Manhattan.

             This note has been giving me fits and the reason it has been giving me fits is that it's very important, and the

parties agree it's very important, that you not think that by sending you back testimony I have a particular view of the evidence. Remember, you are going to tell me what your view of the evidence is.

By the same token, it's very important that I not intrude on your deliberations. I don't want to know what you are all talking about back there. The problem there is the word worked. I need you to rework this note. If you mean by work employed, would you please rewrite the note to say Correa and Ray Williams having been employed by Dr. Mirilishvili. If you mean having dealings, if that's what you mean by work, would you please rewrite the note to say, Correa and Ray Williams having dealings with Dr. Mirilishvili. If you mean something else, put something else in there for the verb worked. That will clarify it for me and it will save me a whole lot more agonizing, which I have been doing for way too long. I have decided to put it back to you. Good morning and send me out a revised note.

(Jury deliberations resumed; time noted: 9:50 a.m.)

MR. DISKANT: Your Honor, it might be helpful to send them their old note back.

THE COURT: I think they are fine. I think they are just fine.

I am still going through your suggestions and I am going through your suggestions with kind of my own personal

1  understanding, which is that I believe that the note is going
2  to come out and it's not going to say employed.  I'll be back
3  to tell you after we see the note.
4           (Recess pending verdict)
5           THE COURT:  Jurors are an unending source of surprise
6  to me.  That's why I love them.
7           Court Exhibit 3, I believe, Court Exhibit 2 being the
8  verdict sheet, Court Exhibit 3 says:  We, the jury, no longer
9  need to see the transcript.  Fine with me.  But need a copy of
10 the charge.  There are apparently three pages of the charge
11 that got left in by mistake.  They are being taken out right
12 now and they will get the charge.
13          (Recess pending verdict)
14          THE DEPUTY CLERK:  Judge, there is a note, Court
15 Exhibit 4.
16          THE COURT:  Court Exhibit 4.  Court Exhibit 4
17 indicates that the jury has reached a verdict.
18          Mr. O'Neil, would you bring in the jury, please.
19          THE DEPUTY CLERK:  Officers, bring the jurors in.
20          (Jury present)
21          THE COURT:  Ladies and gentlemen, I have your note
22 indicating that you have reached a verdict.
23          Mr. O'Neil, would you please take the verdict sheet
24 from the foreperson.
25          THE DEPUTY CLERK:  Yes, Judge.

1     THE COURT: Would you return this to the foreperson
2  and take the verdict, please.
3     THE DEPUTY CLERK: Mr. Foreperson, has the jury
4  reached a verdict as to all counts?
5     THE FOREPERSON: Yes.
6     THE DEPUTY CLERK: How do you find the defendant as to
7  Count One of the indictment, alleging that in or about January
8  2012 through on or about December 2014, the defendant conspired
9  to unlawfully distribute a controlled substance, oxycodone,
10 guilty or not guilty?
11    THE FOREPERSON: Guilty.
12    THE DEPUTY CLERK: How do you find the defendant as to
13 Count Two of the indictment, alleging that or on about January
14 10, 2013, the defendant unlawfully distributed a controlled
15 substance, oxycodone, guilty or not guilty?
16    THE FOREPERSON: Guilty.
17    THE DEPUTY CLERK: How do you find the defendant as to
18 Count Three of the indictment, alleging that or on about
19 October 28, 2014, the defendant unlawfully distributed a
20 controlled substance, oxycodone, guilty or not guilty?
21    THE FOREPERSON: Guilty.
22    THE DEPUTY CLERK: Thank you.
23    THE COURT: Mr. Mazurek, do you want the jury to be
24 polled?
25    MR. MAZUREK: Yes, your Honor.

1     THE COURT:  Would you poll the jurors, Mr. O'Neil.

2     THE DEPUTY CLERK:  Yes.

3     Jurors, harken to your verdict as it stands recorded. You say through your foreperson that you find the defendant, Moishe Mirilishvili, guilty of Count One of the indictment, alleging that in or about January 2012 through on or about December 2014, he conspired to unlawfully distribute a controlled substance; and that on Count Two of the indictment that on January 10, 2013, he unlawfully distributed a controlled substance; and on Count Three, that or on about October 28, 2014, he unlawfully distributed a controlled substance.

13     (Jury polled; each juror answered in the affirmative)

14     THE COURT:  Ladies and gentlemen, we have reached the moment when it's time to part.

16     At this moment I harken back many years to the practice of a judge who, for those of us who sit on this court is like a God, truly one of the finest judges ever to sit on any court of the United States.  His name was Edward Weinfeld. And Judge Weinfeld is someone that all of us who sit on this court strive to emulate in practically every way because of his brilliance and scholarship and his devotion to the job, his command in the courtroom, and his dealings with the lawyers was everything you would want and hope a judge would be.  And I'm a big fan of Judge Weinfeld's.  I actually appeared before him

1  when I was a lawyer and it was a really amazing experience for
2  me.
3             But there is one thing that he did, and he was famous
4  for doing it, that I can't imitate.  When this moment came, the
5  moment to discharge the jurors, he said to them, ladies and
6  gentlemen, I suppose you are expecting thanks.  You will wait
7  in vain for thanks from me because you, like I, must take your
8  satisfaction in knowing that you have discharged your
9  obligation to the best of your ability.  There is a kernel of
10 truth in that.  That is how we take our satisfaction in the
11 justice system.
12            But the fact is, I can't not thank you because you and
13 I know that there were lots of people who showed up in the jury
14 room on that day.  And I must say, we had an extraordinary, an
15 extraordinary voir dire where practically nobody made up some
16 lame excuse to try to get out of serving.  It was really an
17 extraordinary day.  It's one of the reasons I will never forget
18 that voir dire.  There were plenty of people who got the same
19 jury notice you got and threw it in the thrash or called for
20 their 15th postponement, and there are people who do try one
21 way or another to get off jury service.  But not you.  You
22 understood what your duty was, you were willing to be called
23 upon if asked, and you've taken two weeks out of your busy
24 lives to resolve a matter involving people you do not know and
25 will never see again and to which you have no connection except

1  the connection that has been imposed upon you by the Court, and
2  I think that is an extraordinary thing to do. I really do.
3      And so I do thank you for myself on behalf of all of
4  us here in the Southern District of New York and I'm sure on
5  behalf of the parties and their counsel as well.
6      Ladies and gentlemen, you are now free to go. I need
7  to have a chat with the parties. And anybody who is going to
8  the St. Patrick's Day parade is certainly free to leave.
9      In five or 10 minutes, I would like to come back and
10 shake hands with anybody who happens to stick around. I would
11 like to thank you personally, if I can have the opportunity.
12      Ladies and gentlemen, you are discharged.
13      (Jury discharged)
14      THE COURT: Mr. Diskant.
15      MR. DISKANT: Yes, your Honor. The government seeks
16 remand pursuant to Title 18, United States Code, Section
17 3143(a)(2), which is now mandatory.
18      MR. MAZUREK: Your Honor, I think a number of legal
19 issues were raised during the course of trial motions and
20 trial. I would ask that under 3143(a)(2) that the Court
21 consider keeping Dr. Mirilishvili released on bail. The bail
22 has been significant. It's a $2 million bail. It's cosigned
23 by several members of his family and secured by property. He
24 has appeared at all of his proceedings. He has no reason to
25 flee. All his family is here. His two daughters and his wife

1    have appeared.  You've seen them in court almost every single

2    day during the course of the trial.  He has also four

3    grandchildren.

4            He does not pose any risk of flight.  He is certainly

5    not a danger because of the fact that he doesn't have a DEA

6    license.  That was submitted at the time of bail.  It was first

7    announced at the case at his initial appearance.  And I would

8    ask that he be allowed to appear at his sentencing on bail as

9    opposed to being detained.

10            THE COURT:  Mr. Diskant.

11            MR. DISKANT:  Your Honor, I'm certainly happy to get

12   into the particulars, but frankly --

13            THE COURT:  You don't need to get into the particulars

14   of the legal issues because I appreciate what Mr. Mazurek is

15   saying.  I don't think I made a mistake.  I do not believe that

16   there is any appreciable chance that the defendant will prevail

17   on appeal.  There is so much evidence to support this record.

18   I think the evidence is overwhelming.  Let's just get back to

19   the 3143 provision.

20            MR. DISKANT:  The other issues raised by Mr. Mazurek,

21   just under the statute, are not relevant.  He has to establish

22   that there is a likelihood, a substantial likelihood of motion

23   for acquittal or new trial.  And I think as the Court just

24   indicated --

25            THE COURT:  That was my understanding.  I just wanted

1  to read the statute again.  I think we can all agree that
2  remand is mandatory for a conviction under these statutes
3  following a verdict of guilty unless I find that there is a
4  substantial likelihood that a motion for acquittal or new trial
5  will be granted.  I can tell you it will be denied.  There is
6  zero likelihood that such a motion will be granted or that the
7  attorney for the government has recommended that no sentence of
8  imprisonment be imposed.  The government is not so
9  recommending.  My hands are tied.  I don't think it is an
10 inappropriate thing, however.  The defendant is remanded.
11         MR. MAZUREK:  Judge, can I also ask to extend the date
12 for filing posttrial motions.
13         THE COURT:  Yes, you may.
14         MR. MAZUREK:  May I have 30 days?
15         THE COURT:  You may have 30 days.  Thank you.
16         (Trial concluded)